

**RICHMOND POLICE DEPARTMENT GENERAL ORDER**
**NOTE:** This directive is for internal use only, and does not enlarge an employee's civil liability in any way. It should not be constructed as the creation of a higher standard of safety or care in an evidentiary sense, with respect to third party claims. Violation of this directive, if proven, can only form the basis of a complaint by this department, and then only in a non-judicial administrative setting.

| Chapter | Number | Effective Date | Review Date |
|---|---|---|---|
| 6 | 10 | **04/19/10** | **2013** |

| Subject | |
|---|---|
| **RESTRAINT, TRANSPORTATION AND TEMPORARY DETENTION OF CUSTODIAL ARRESTEES** | ☐ New Order<br>☒ Replaces<br>*G.O. 6-10, (11/24/09)* |
| References<br>CALEA 70.1.1, 70.1.2, 70.1.3, 70.1.4, 70.1.5, 70.1.6, 70.1.7, 70.2.1, 70.3.1, 70.3.2, 71.1.1, **71.2.1, 71.3.1, 71.3.3, 71.4.1, 71.4..2, 71.4.3,** 71.5.1<br>VLEPSC OPR. 08.01-.08.08, 09.01<br>VA Code §19.2-76 and §19.2-77<br>*General Order 7-7, Interview Rooms* | |

_____    04/19/10
**Chief of Police or Designee**    **Date**

I. <u>PURPOSE</u>

The purpose of this directive is to establish the proper guidelines for handling custodial arrestees. This directive also includes the procedures to be used for reducing the risk of positional asphyxia when suspects are taken into custody.

II. <u>POLICY</u>

    A.    Transportation of persons in custody is a constant requirement and a frequent activity. In all instances of transfer of persons in custody, officers shall take care not to endanger themselves while ensuring the prisoner's safety, thus limiting opportunities for escape.

    B.    It is the policy of the Richmond Police Department to ensure that all persons under arrest are handled as safely and efficiently as possible to protect the police, the arrestee and citizens alike. An officer may use whatever force he/she reasonably believes is necessary to make an arrest in order to protect him/her and the public from bodily harm. To that end, all arrestees placed in a police vehicle will be searched, properly handcuffed and secured, to include seat belt usage, when applicable, even if the arrestee is to be held only temporarily.

III. ACCOUNTABILITY STATEMENT

All employees are expected to fully comply with the guidelines and timelines set forth in this General Order.  Failure to comply will result in appropriate corrective action. Responsibility rests with the Division Commander to ensure that any violations of policy are investigated and appropriate, training, counseling and/or disciplinary action is initiated.

IV. **_DEFINITIONS_**

    A. ***Temporary Detention – Detention of a custodial arrestee for the purpose of processing or testing.  Temporary detention is measured in hours and does not involve housing or feeding detainees except in extenuating circumstances.***

V. PROCEDURE

    A. Securing Custodial Arrestees:

Department-approved restraining devices (handcuffs, leg irons, and/or belly chains) shall be used whenever a prisoner is taken into custody, and shall remain in place until the prisoner arrives at his/her destination unless the application of such devices are a risk to a prisoner's health or safety due to a physical condition (handicap, injury, or illness) or mental state, or the application is physically impossible to accomplish.

      1. Handcuff Procedure:

        a. Officers shall handcuff all adult arrestees.  Juvenile offenders, regardless of age, shall be handcuffed prior to transporting.

        b. For safety and control reasons, arrestees will be handcuffed behind their backs, unless there are specific justifications for doing otherwise.

        c. Handcuffs are to be placed on the suspect with the keyholes pointing upward, if possible, with the double locking pins depressed.

        d. Arrestees will not be handcuffed to stationary objects.

      2. Leg Irons and Belly Chains:

        a. If necessary, issued leg irons and/or belly chains may be used as restraining devices.  A supervisor's approval is required prior to usage.

        b. Belly chains are to be placed around an arrestee's waist with the brass handcuff ring passed through the chain link nearest to the center of the front of the arrestee's waist.  The officer shall then secure an issued handcuff bracelet to one of the arrestee's wrists, and pass the second bracelet through the ring to the other wrist.  All excess chain shall then be secured to the belly chain encircling the suspect's waist by means of the provided clip.

      c. Leg irons shall be attached to the ankle area of the arrestee, above the anklebone, with the locking mechanism facing upward, and the double locking pins depressed.

   3. Other Types of Restraint Devices:

      a. Nylon flexible restraints are not authorized for use as a primary restraint device. They may, however, be used when the situation warrants (i.e. mass arrests, arrests within unruly crowds, etc.). Mass Arrest Kits, which contain flexible restraints, are available at the request of the supervisor on the scene. Proper handcuffing techniques shall also apply to the use of flexible restraints with considerations for security, safety, and comfort. The Mass Arrest Kits are located at all Precincts, SED and the Training Academy.

      b. Hinged handcuffs, thumb cuffs, hobbles, and other non-approved restraint devices will not be used under any circumstances.

B. Search and Transport of Arrestees:

1. All persons under arrest are to be considered potentially dangerous, and will be thoroughly searched for weapons and/or contraband by the arresting officer prior to transport.

2. Whenever an arrestee is relinquished to the custody of a transporting officer, that officer will search the arrestee for weapons and/or contraband.

3. Any vehicle used or having the potential to be used for prisoner transportation shall be inspected for weapons and/or contraband prior to beginning a tour of duty. The transporting officer shall also search the transport vehicle for weapons and/or contraband before and after transporting the arrestee.

4. As a matter of routine, a violent or disruptive arrestee should not be placed in a patrol car. All such arrestees should be transported in a patrol wagon, if available.

5. Officers shall document all prisoner transports and shall note any unusual circumstances or events. Officers shall document the circumstances of any apparently ill or injured prisoners and their medical treatment. If transports are due to an IBR offense, include on the IBR (in the Narrative Section) any unusual circumstances or events.

6. Any injury to a prisoner that is not related to a police use of force (such as injury to a prisoner in a transport wagon or an injury created by a prisoner trying to flee arrest) shall be reported in letter format, and will have a supervisory cover letter, photos, and any arrest documentation attached. The original will be forwarded through channels to the Major of the affected Service, with a copy to the Internal Affairs Division.

7. When transporting an arrestee, the transporting officer shall provide law enforcement services <u>only</u> when:

    a. A need exists for the transporting officer to act immediately in order to stop or prevent a violent act and prevent further harm to a victim.

    b. A person has been injured and assistance is required immediately.

    c. A crime is in progress, thus creating an immediate need to apprehend the suspect.

    d. In all of the above situations, the transporting officer shall ensure, at all times, that the arrestee is secured and protected.

    e. Non-emergency situations shall be radioed to the Division of Emergency Communications (DEC) by the transporting officer. DEC shall be responsible for dispatching the non-emergency incident to an available unit.

    f. If a non-police occupant (e.g. prisoner, witness, complainant, citizen, ride-along, etc.) is in the vehicle, the officer will not engage in a pursuit, unless that passenger is discharged at a safe location.

    g. It is not a violation of this procedure to intervene in an emergency or life-threatening situation. Only when the risk to third parties is both clear and grave and the risk to the prisoner is minimal, shall a transporting officer stop to render assistance.

C. Transporting Arrestees in a Patrol Car:

   1. In a one-officer unit, the arrestee will be properly handcuffed, secured and seat belted in the right front seat of the vehicle and all doors will be locked.

   2. In two-officer units, the arrestee will be placed in the right rear seat and properly secured and seat belted with all doors locked. The second officer will ride behind the driver.

   3. When transporting two arrestees in a two-officer unit, one arrestee will be placed in the front right seat of the vehicle, and the other in the back right seat and properly handcuffed secured and seat belted. The second officer will ride behind the driver.

   4. As a matter of routine, no more than two (2) arrestees may be transported in a patrol car. However, in mass arrest situations or other such emergency situations, supervisors may authorize the transporting of up to three (3) arrestees, if absolutely necessary.

D. Transporting Arrestees in Caged Patrol Vehicles:

The arrestee shall be placed in the passenger rear. Unless absolutely necessary and with supervisory approval, officers shall refrain from transporting more than one (1) arrestee in a caged patrol vehicle.

E. Transporting Arrestees in the Patrol Wagon:

1. Each patrol wagon shall be equipped with one set of leg irons and two sets of belly chains.

2. When transporting arrestees, the rear and side doors of the patrol wagon will be locked.

3. Male and female arrestees will not be placed in the same compartment of a patrol wagon. Juveniles will not be transported with adult arrestees.

4. The wagon driver or designee shall, during transports of multiple arrestees, visibly check on the status of each and every arrestee being transported in the wagon whenever taking an additional arrestee into custody for transport. During a transport of a single arrestee only, the wagon driver or designee should periodically, as time and circumstances permit, visibly check on the status of the arrestee.

5. If the patrol wagon is equipped with seat belts, the wagon driver, and arresting officer shall ensure the arrestee is properly handcuffed, secured and seat belted. Each officer will evaluate the feasibility of seat belting an arrestee. If an arrestee's conduct may risk injury to the officer during seat belting, the officer will ensure the arrestee is properly handcuffed and placed in wagon without a seat belt.

6. When handling and searching arrestees, officers shall remain mindful of General Order 6-18, Infectious Diseases.

F. Control of Arrestees while Transporting:

1. During transport, the arrestee <u>shall not</u> be allowed to communicate with other persons unless deemed absolutely necessary by the transporting officer due to medical emergencies or other exigent circumstances.

2. The transporting officer shall continually observe the arrestee, even when it becomes necessary to allow the arrestee the use of a toilet.

3. In a situation where observation is not possible (female arrestee needing toilet facilities and male transporting officer or vice versa), the officer shall exercise as much control of the situation as possible. The arrestee shall not be allowed in the facility with another person and the officer shall ensure that there are no escape routes within the facility and no weapon available to the arrestee.

4. If the arrestee appears lethargic, particularly after an active confrontation with the officers, or appears unresponsive, consider the possibility that immediate medical assistance may be necessary. Observe the arrestee carefully and if the

      officer is in any doubt about the arrestee's health, summon medical assistance immediately. Officers should ask an apparently sick arrestee if he/she wishes medical assistance.

    5. The transporting officer shall advise the receiving officer of the arrestee's medical condition.

    6. The transporting officer shall forewarn the receiving officer of any prisoner considered a security hazard so that appropriate security measures can be established.

G. Procedures for Transporting Members of the Opposite Sex, Juveniles, and the Physically Disabled:

  1. Transporting Members of the Opposite Sex:

    a. If a female officer is required, by circumstance, to transport a male arrestee or if a male officer is required to transport a female arrestee, the transporting officer shall notify DEC, via radio and provide the mileage and destination at the beginning of the transport.

    b. Immediately upon arriving at the final destination, the transporting officer shall notify DEC via radio of the ending mileage.

    c. If the arrestee is transported to a hospital, subsequently treated, and released, the transporting officer shall notify DEC as outlined above prior to transporting the arrestee to the lock-up.

  2. Transporting Juvenile Offenders:

    a. Juvenile offenders, regardless of age, shall be handcuffed prior to transporting.

    b. Juvenile under 13 years of age shall not be transported in patrol wagons unless their actions warrant such a response. A supervisor shall be notified as soon as safely possible regarding the transport of the juvenile.

    c. If the arresting officer feels the need to transport a juvenile by other means than a normal patrol vehicle, he/she should attempt to use a caged patrol unit, before using a patrol wagon.

    d. All mileage and destination shall be recorded and reported by radio to DEC.

  3. Transporting Physically Disabled Arrestees:

    a. Department-approved restraining devices will be used on physically disabled arrestees, as determined to be appropriate by the arresting officer. Officers shall exercise their best judgment in determining the proper method for securing the individual(s).

      b.    Officers shall take special precautions to ensure that the arrested individual and any prosthetic devises and/or wheel chairs are carefully examined for contraband and/or weapons, prior to transporting.

      c.    If unsure of how to secure and transport a disabled individual, officers shall contact their supervisor for guidance.

      d.    A supervisor may make a determination that the only way to transport a prisoner is by ambulance. Depending on the severity of the charge, a supervisor may have an officer ride in the ambulance, or follow the ambulance in a police unit. A supervisor may summons an ambulance through DEC.

      e.    The arresting officer shall closely monitor the disabled arrestee to reduce the opportunity of escape, suicide, and assault on hospital and/or EMS personnel. Only under unusual circumstances, deemed medically necessary, will the arrestee be allowed out of the arresting officer's sight.

H.    Medical Treatment Procedure for Injured/Sick Arrestees:

1. Officers shall notify a supervisor when an arrestee may be in need of medical attention. The supervisor will determine whether the arrestee is to be transported to the hospital (preferably VCU Medical Center) or whether an ambulance is necessary (the officer may summons an ambulance through DEC and depending on the severity of the charge, a supervisor may have an officer ride in the ambulance or follow the ambulance in a police unit).

2. Taking into account the arrestee's injuries, all arrestees will be handcuffed prior to being transported to the hospital.

3. If the arrestee's injuries are such that he/she has to remain in the hospital, the officer shall notify the Magistrate and advise him/her that an arrestee is being admitted for medical care. It is the responsibility of the Magistrate to respond to the hospital for a bond hearing.

4. It is also the responsibility of the Magistrate to complete the Commitment to Jail Form, which transfers custody of the arrestee to correctional personnel.

5. The arresting officer shall closely monitor the arrestee to reduce the opportunity of escape, suicide, and assault on hospital and/or EMS personnel. If restraints are removed for treatment, caution should be exercised while the arrestee is unfettered. Only under unusual circumstances, deemed medically necessary, will the arrestee be allowed out of the arresting officer's sight. It is the arresting officer's responsibility to remain with the arrestee in the hospital until the Department of Corrections' officer or the Sheriff's deputy arrives and secures custody.

6. When physical custody is transferred, the officer on the scene will be responsible for ensuring that any/all Department leg irons and belly chains used are returned to the proper patrol wagon.

7. If an arrestee refuses medical treatment, he/she shall be asked to sign a Medical Refusal Form. If the arrestee refuses, the officer shall have hospital personnel sign the form and indicate "AMA" (Against Medical Advice), before the arrestee is transported to the lock-up.

8. The transporting officer shall note in the Incident Report Narrative whether the arrestee received or refused medical treatment. The narrative shall contain all pertinent information relative to the hospital visit. The arresting officer shall retain a copy of the "AMA" report. The Incident Report shall specifically contain the following:

    a. The name of the hospital;

    b. The name of the attending physician;

    c. The nature of the injury or problem; and,

    d. The names of witnessing officers, supervisors, or medical personnel on the scene.

9. The detention personnel shall be given a copy of the Emergency Room Sheet stating that the suspect has been "treated and released" or "refused treatment".

I. Positional Asphyxia – Sudden Death:

Although rare, sudden in-custody deaths appear to be associated most often with the following variables:

1. Cocaine induced bizarre or frenzied behavior – when occurring while the suspect is confined by restraints, cocaine induced delirium may increase a subject's susceptibility to sudden death by causing an increased heart rate to a critical level.

2. Drugs and/or alcohol intoxication – a major risk factor because respiratory drive is reduced, and subjects may not realize that they are suffocating.

3. Violent struggle extreme enough to require officers to employ some type of restraint technique – subjects, who have engaged in extreme violent activities, may be more vulnerable to subsequent respiratory failure.

4. Unresponsiveness of subject during or immediately after a struggle – such unresponsive behavior may indicate cardiopulmonary arrest and the need for immediate medical attention.

5. The risk of positional asphyxia is compounded when an individual with predisposing factors (e.g. obesity, alcohol, high drug use, or an enlarged heart, et cetera) becomes involved in a violent struggle with an officer, particularly when physical restraint includes the use of behind-the-back handcuffing in combination with placing the subject in a stomach-down position.

6. Whenever possible, officers shall avoid the use of maximally prone restraint techniques (e.g. hog-tying). To minimize the potential for in-custody injury or death, officers shall:

   a. Follow existing training and policy guidelines for situations involving physical restraint of subjects;

   b. Get the subject off his/her stomach as soon after handcuffing as circumstances allow;

   c. Ask the subject if he/she has used drugs recently, or suffers from any cardiac or respiratory diseases or conditions, such as asthma, bronchitis, or emphysema;

   d. Monitor the subject carefully and, if needed, obtain medical treatment for the subject;

   e. Obtain medical care upon the subject's request, if he/she experiences difficulty breathing;

   f. Inform the deputy sheriffs, if the subject is turned over to lock-up, of any pre-existing medical conditions (cardiac or respiratory, if known) or that the subject requested or needed medical treatment, or becomes unconscious; and,

   g. Officers involved in a confrontational situation shall document as much information as possible about the incident that may later be of value in a civil or criminal action case.

J. Processing and Testing:

   1. Supervision and Accountability:

      a. Officers are responsible for the supervision of all arrestees brought into custody at all times. Officers shall search all arrestees prior to juvenile processing and/or breathalyzer testing.

      b. Arrestees shall not be left unattended at any time.

   2. Safety Procedures:

      a. Officers are accountable for individuals brought into departmental facilities and shall prevent unauthorized access to arrestees and the processing and/or testing areas.

      b. Officers shall keep potentially violent arrestees restrained in handcuffs while undergoing processing and/or testing. Combative adult arrestees will not remain in departmental facilities but will be transported directly to Lock-Up.

       c. Officers ***shall*** secure their firearm(s) prior to entering ***any temporary detention area*** in the weapons lock box.

       d. In the event that an officer finds him/herself in a situation of duress, he/she shall utilize his/her Department-issued radio to call for assistance.

       e. Following the completion of processing and/or testing, the arrestee shall immediately be transported to ***Lock-Up***.

K. Handling Arrested Persons from Non-Contiguous Jurisdictions:

1. Transportation to the lockup for suspects arrested in non-contiguous jurisdictions shall be handled by the Richmond Sheriff's Office.

2. The Richmond Police Department's Warrant and Information Desk will have the warrant faxed from the appropriate jurisdiction.

3. The Richmond Sheriff's Office will handle the processing of the arrestee to the proper jurisdiction.

L. Arrest of Persons on Warrants from Henrico County:

1. Richmond Police officers shall transport to the appropriate Henrico booking facility any person arrested on a warrant from Henrico after verifying that a warrant is on file in Henrico County.  Henrico County officers will reciprocate this procedure for persons they arrest on Richmond warrants.

2. A Henrico County Booking Section officer will fill out the appropriate arrest sheet and execute the warrant for the Richmond officer.

3. When a Henrico County officer brings a person to Richmond on a Richmond warrant, Information Desk personnel shall pull the warrant for the Henrico officer.

4. Whenever the Richmond Police Department has a warrant that needs to be transported to Henrico County, the Richmond police officer assigned to the call shall transport the warrant directly to the Henrico Police Headquarters. The Henrico County Police Department will reciprocate this procedure for Richmond warrants.

M. Arrest of Persons on Warrants from Chesterfield County:

1. Richmond Police officers shall transport to the appropriate Chesterfield jurisdiction line any person on a warrant from Chesterfield after verifying that a warrant is on file in Chesterfield County.  Chesterfield County officers will reciprocate this procedure for person they arrest on Richmond warrants.

2. A Chesterfield County officer will fill out the appropriate arrest sheet and execute the warrant for the Richmond officer.

3. When a Chesterfield County officer brings a person to the Richmond jurisdiction line on a Richmond warrant, the Information Desk personnel shall verify the physical existence of the warrant on file for the Richmond officer.

N. Going beyond a Contiguous Jurisdiction to make an Arrest:

The Warrant and Information Services Unit will send a Teletype to the appropriate jurisdiction to inform them the subject is wanted.

O. Escapes:

If a prisoner escapes while in custody or being transported, the arresting transporting officer shall observe the following procedures:

1. Request assistance immediately from the jurisdiction the officer is in at the time of the escape.

2. The transporting officer shall immediately provide DEC with the following information so it can be simulcast to assisting officers and proper supervisory notifications can be made:

    a. Location;

    b. Direction and method of travel, and means of escape;

    c. Name and physical description of the escapee;

    d. Possible weapons possessed by the escapee; and,

    e. Pending charges.

3. Try to recapture the escapee as soon as possible. VA Code §19.2-77 authorizes an officer to pursue and arrest the escaped prisoner anywhere in Virginia, if in close pursuit.

4. The arresting transporting officer shall submit a written report to the Chief of Police, through channels, as soon as practicable explaining the circumstances of the escape.

P. Special Situation Transports:

1. Prisoner transports for unique circumstances such as to attend funerals, to visit a critically ill relative or to attend the reading of a will, is a function of the Richmond Sheriff's Office and shall not be performed by members of the Richmond Police Department.

2. Prisoner transports to court or from one detention facility to another is a function of the Richmond Sheriff's Office and shall not be performed by members of the Richmond Police Department.

3. The Richmond Sheriff's Office will handle transports of wanted individuals turning themselves in at Richmond Police Headquarters.

Q. Transfer of Arrestee to Richmond Sheriff's Office personnel:

1. The arresting officer shall secure his/her weapon(s) in the lock box provided at the lock-up prior to taking custody of the arrestee from the transporting officer.

2. The arresting officer will then search the arrestee once again and take the arrestee to the Video Conference Room in the Sally Port where he/she will complete the forms, fax them to the magistrate, wait for the magistrate to connect for the video conference to establish probable cause, and receive the Commit to Jail Form via fax from the magistrate. The arresting officer will then relocate with the arrestee so that the next officer(s) in line can use the Video Conference Room.

3. The arresting officer will notify the Sheriff's deputies that he/she is standing by with an arrestee. When the deputies are ready to receive the arrestee, the arresting officer will escort the arrestee into lock-up, removing the restraints only after the deputies' request that they be removed.

4. The arresting officer will submit the Commit to Jail Form and any other necessary documentation to the receiving deputy and advise the deputies of any potential medical or security risks pertaining to the arrestee. The arresting officer shall not leave lock-up until the deputies notify him/her that they have custody of the arrestee and that the officer is relieved.

R. Documentation:

Officers shall document all prisoner transports and note any unusual circumstances or events. Officers shall document the circumstances of any apparently ill or injured prisoners and their medical treatment. If transports are due to an IBR offense, include on the IBR in the narrative any unusual circumstances or events, otherwise append a note to the call using the MDC with the same information. The Sheriff's Office will not assume custody of the arrestee until all documentation is submitted to the receiving deputy.

S. *Temporary Detention:*

1. *Supervision and Accountability for Temporary Detention Areas:*

    a. An arrestee may be detained for the purpose of breathalyzer procedures in the Department's breathalyzer rooms and/or for juvenile processing procedures in the Department's juvenile processing areas, *areas authorized for temporary detention of custodial arrestees.*

    b. *Officers shall be provided with training on the use of temporary detention areas as well as refresher training at least once every three years.*

    c. *Officers shall document the date, time in and out of the detention area and the reason that the detainee was brought in with the Narrative section of the IBR report.*

2. *Rooms Authorized for Temporary Detention:*

    a. *Breathalyzer Room;*

    b. *Juvenile Processing Room; and,*

    c. *Detention rooms in an off-site law enforcement facility, pursuant to regulations set forth by the off-site law enforcement agency.*

3. *Separation:*

    *Officers shall separate males from females and juveniles from adults when in detention.*

4. *Minimum Physical Conditions:*

    a. *All areas designated for temporary detention shall be lighted and climate controlled;*

    b. *Officers shall provide water to the arrestee upon request and escort the detainee to the restroom, if necessary; and,*

    c. *No meals will be provided to temporary detainees.*

5. *Safety Procedures:*

    a. *Officers are accountable for individuals that they allow into departmental facilities and shall prevent unauthorized access to detainees or temporary detention areas.*

    b. *If audio and/or video devices contained within Departmental Interview Rooms are used to monitor detainees, the officer shall be governed by procedures set forth in General Order 7-7, "Interview Rooms."*

    c. *Officers shall have a face-to-face visual observation of all detainees at least every thirty (30) minutes.*

    d. *No detainee shall be secured to a fixed object.*

6. *Inspections:*

    a. *Temporary detention rooms shall be inspected weekly for cleanliness and to determine whether unsafe conditions have manifested.*

    b. *The Internal Affairs Division shall conduct an administrative review of all designated temporary detention rooms at least triennially to ensure that all policies and procedures are being followed and that the*

*original intent for authorization and use of the detention room continues to be adequate for Department use.*

7. **Fire Evacuation Plan**

   *A fire evacuation plan will be posted near the temporary detention areas. Officers are required to be familiar with the evacuation plan for that particular area and must also be familiar with the location and operation of fire suppression equipment such as fire extinguishers and fire alarms.*

8. **Escape Prevention**

   *When an individual is secured inside a temporary detention room area without another officer inside the same area with the arrestee, then an officer must be posted outside the temporary holding area. The officer must monitor the arrestee at least every fifteen minutes to maintain a safe and secure environment for employees, the general public and the arrestee.*

VII. <u>FORMS</u>

   A. IBR

   B. Medical Refusal Form, if applicable

   C. Commit to Jail Form